IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DELLA J. DUMBAUGH, Ph.D,
Plaintiff,

v.  Civil Action No. 3:19-cv-57

UNIVERSITY OF RICHMOND,
Defendant.

## OPINION

Dr. Della Dumbaugh, a former Associate Dean of the School of Arts and Sciences at the University of Richmond, brings this action under Title VII of the Civil Rights Act of 1964. She alleges that the Dean, Dr. Patrice Rankine, criticized and humiliated her, stripped her of responsibilities, and barred her from working with other personnel, causing her to resign her post as Associate Dean. The University has moved to dismiss for failure to state a claim. Because Dumbaugh fails to plead facts showing an adverse employment action or that Rankine's conduct qualifies as severe or pervasive, the Court will grant the motion to dismiss. The Court will dismiss Count One with prejudice. The Court, however, will dismiss Count Two without prejudice and will grant Dumbaugh leave to amend her complaint as to Count Two.

## I. FACTS ALLEGED IN THE COMPLAINT

Dumbaugh joined the faculty of the University's Department of Mathematics and Computer Science in 1994. In 2016, Rankine became Dean of the School of Arts and Sciences and chose Dumbaugh to serve as Associate Dean. The parties anticipated that Dumbaugh would serve a three-year term with the potential that Rankine would reappoint her for an additional three years. Dumbaugh's relationship with Rankine began to deteriorate in April, 2017.

During a staff meeting in April, 2017, Rankine asked Dumbaugh to share the reactions of faculty members to his remarks at a recent University event. After Dumbaugh conveyed several negative reactions from faculty members, Rankine cut her off, and said that the reactions came "from a position of low self-esteem." (Dk. No. 1, at ¶ 11.)

In several staff meetings during April and May, Rankine told Dumbaugh not to "panic." (*Id.* at ¶ 13.) During one meeting, Dumbaugh asked Rankine to stop ridiculing her in front of other faculty members. Rankine responded, "[y]ou are not in charge of this meeting!" (*Id.* at ¶ 14.)

In May, 2017, Rankine directed Dumbaugh to organize the new faculty orientation. When Dumbaugh presented her preliminary arrangements, Rankine criticized her for making plans without his approval.

In June, 2017, Rankine told Dumbaugh to coordinate first-year undergraduate classes. To accomplish that task, Dumbaugh needed first-year registration data. Rankine, however, prohibited Dumbaugh from communicating with the Provost, who had the necessary data. Dumbaugh says that Rankine also barred other women from contacting University officials to complete their tasks. Dumbaugh proceeded to schedule classes by contacting individual department chairs. Even though her predecessor had also contacted department chairs for scheduling purposes, Rankine "threw his head back in disgust and criticized her for 'singling out chairs this way.'" (*Id.* at ¶ 17.) Rankine also reassigned Dumbaugh's tasks without telling her.

When Rankine asked Dumbaugh about a project during a budget meeting in July, she prefaced her answer with, "I know this might make you frustrated or angry." (*Id.* at ¶ 20.) Rankine responded, "[w]hen have I been frustrated or angry? This comment is not constructive.

2

It is not helpful." (*Id.*) In contrast, when a male counterpart began bad news with "[t]his is going to piss you off," Rankine simply replied, "[t]ry me." (*Id.* at ¶ 21.)

On August 2, 2017, Rankine reappointed Dumbaugh as Associate Dean for another year. (*Id.* at ¶ 24.) During a retreat later that month, staff members discussed their results from a "love language" survey. When a staff member shared that his love language was "words of affirmation," Rankine said, "[y]ou are a 'words of affirmation' person: [y]ou are doing a good job." (*Id.* at ¶ 25.) Dumbaugh responded, "these words only count if they are not spoken disingenuously." (*Id.*) Rankine replied, "[t]hat is so low." (*Id.*)

Two days after the staff retreat, Dumbaugh called Rankine to resign as Associate Dean. Rankine simply responded, "[o]key, dokey." (*Id.* at ¶ 26.) Dumbaugh says that Rankine humiliated her in front of her colleagues, stripped her of responsibilities, raised his voice when speaking with her, or barred her from working with others in at least nine out of sixteen meetings from April to August of 2017. She says that other women quit after Rankine treated them the same way. She further alleges that Rankine's behavior diminished her professional reputation and opportunity for advancement in the University, and caused lost earnings, emotional distress, humiliation, and embarrassment.

After exhausting her administrative remedies, Dumbaugh filed this action. Her complaint alleges two counts: gender discrimination in violation of Title VII (Count One), and hostile work environment in violation of Title VII (Count Two). The University has moved to dismiss both counts for failure to state a claim.

## II. DISCUSSION[1]

### *A. Count Two: Hostile Work Environment*

To survive a motion to dismiss on a hostile work environment claim, a plaintiff must plead sufficient facts showing that the conduct "(1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015). The University argues that Dumbaugh fails to plead sufficient facts as to the second and third prongs.

Dumbaugh sufficiently pleads that, but for her sex, "she would not have been the victim of the unwelcome conduct." *Noel-Batiste v. Va. State Univ.*, No. 3:12-cv-826, 2013 WL 499342, at *5 (E.D. Va. Feb. 7, 2013). Her allegations show that Rankine treated men and women differently and subjected women to frequent and public criticism. Rankine's unequal treatment also caused other women to resign.

Dumbaugh's allegation that Rankine told her not to "panic" in staff meetings "plausibly invokes a deeply rooted perception – one that unfortunately still persists – that generally women, not men," are overly emotional and prone to hysteria. *Parker v. Reema Consulting Servs, Inc.*,

---

[1] The University has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

915 F.3d 297, 303 (4th Cir. 2019); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989) (holding that behavior based on gender stereotypes can constitute sex discrimination).

Dumbaugh's complaint, however, "must clear a high bar" to meet the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). Offensive epithets, simple teasing, and offhand remarks will not satisfy the test. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

Dumbaugh does not plead facts indicating that any unwelcome conduct qualified as severe or pervasive enough to meet the standard. Rankine made offensive and insulting comments to Dumbaugh at various points in the spring and summer of 2017. He subjected her to unfair and public criticism and reassigned her tasks without telling her. Although rude and disrespectful, Rankine's conduct did not involve "frequent and pervasive slurs and insults based on [her] sex, culminating in threats of violence for continuing to work [as an Associate Dean.]" *Henderson v. Labor Finders of Va., Inc.*, No. 3:12-cv-600, 2013 WL 1352158, at *5, *8 (E.D. Va. Apr. 2, 2013) (finding conduct sufficiently severe or pervasive when the plaintiff's supervisor regularly called him a "homosexual," a "faggot," or "gay," and the insults escalated into threats of violence).

Dumbaugh's allegations show that Rankine disrespected and mistreated her. But they do not give rise to an actionable hostile work environment claim. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315 ("[C]omplaints premised on nothing more than 'rude treatment by [coworkers],'

'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable under Title VII." (internal citations omitted)). Title VII prohibits "extreme" conduct that "must . . . amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. It does not create "a 'general civility code,'" nor does it impose liability for "the ordinary tribulations of the workplace." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). As currently pled, Rankine's conduct does not qualify as severe or pervasive.

Despite the deficiencies in Dumbaugh's allegations, her response to the motion to dismiss gives the Court pause. Dumbaugh does not allege new conduct to support her claim, but the details about Rankine's alleged conduct presented in her response do not match the factual allegations in her complaint. The Court has not considered whether those details alone, if properly pled, would cure the deficiencies discussed above in Count Two. But the Court will nonetheless grant Dumbaugh leave to amend her complaint. Accordingly, in the interest of justice, the Court will dismiss Count Two without prejudice and will grant Dumbaugh leave to amend her complaint as to Count Two.

### B. Count One: Gender Discrimination

To survive a motion to dismiss on a claim for gender discrimination, Dumbaugh must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015). The University argues that Dumbaugh has not suffered an adverse employment action.

Dumbaugh resigned her post as Associate Dean, so she contends that Rankine's conduct amounted to constructive discharge and thus an adverse employment action. To proceed on a

constructive discharge theory, Dumbaugh must sufficiently plead "(1) the deliberateness of [the University's] actions, motivated by [discriminatory] bias, and (2) the objective intolerability of the working conditions." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014). The employer must "deliberately make[] the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004); *see McKinley v. Salvation Army*, 192 F. Supp. 3d 678, 684 (W.D. Va. 2016). A plaintiff can prove this either by showing an employer's conscious effort to force an employee to resign, or by showing that the employee's resignation constituted a reasonably foreseeable consequence of the employer's actions. *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354-56 (4th Cir. 1995).

Dumbaugh's allegations do not meet the objectively intolerable standard. Dumbaugh proceeds on the same factual allegations to support her constructive discharge claim as her hostile work environment claim. Because her allegations do not support a hostile work environment claim, her constructive discharge claim also fails. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe [or] pervasive' standard for hostile work environment claims.").

Moreover, even if Dumbaugh pleads her factual allegations in more detail, her complaint would still fail to state a claim for relief for constructive discharge.[2] Rankine appointed Dumbaugh to the Associate Dean position. Throughout the time Dumbaugh served as Associate Dean, Rankine unfairly criticized her in front of her colleagues, directed rude and demeaning remarks toward her, and made her job difficult by preventing her from communicating with

---

[2] The Court notes that it will grant Dumbaugh leave to amend her complaint as to Count Two not because she omitted facts entirely, but because she describes those facts differently in her complaint and her response brief.

necessary personnel. But "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Furthermore, despite the parties' poor working relationship during the first year, Rankine reappointed Dumbaugh to another term less than one month before Dumbaugh resigned.

Dumbaugh does not plead facts showing that Rankine or the University constructively discharged her from her role as Associate Dean. Accordingly, the Court will dismiss Count One with prejudice.

### III. CONCLUSION

Dumbaugh has failed to plead facts showing an adverse employment action or that Rankine's conduct qualifies as severe or pervasive. Thus, the Court will grant the University's motion to dismiss. The Court will dismiss Count One with prejudice and Count Two without prejudice. Within twenty-one (21) days, Dumbaugh may file an amended complaint only as to Count Two.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 10 September 2019
Richmond, VA

/s/ JC
John A. Gibney, Jr.
United States District Judge