IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DELLA J. DUMBAUGH, Ph.D,
        Plaintiff,

v.                                                Civil Action No. 3:19-cv-57

UNIVERSITY OF RICHMOND,
        Defendant.

## OPINION

Dr. Della Dumbaugh, a former Associate Dean of the School of Arts and Sciences at the University of Richmond, brings this action under Title VII of the Civil Rights Act of 1964. She alleges that the Dean, Dr. Patrice Rankine, criticized and humiliated her, stripped her of responsibilities, and barred her from working with other personnel, causing her to resign her post as Associate Dean. The University has moved to dismiss the amended complaint for failure to state a claim. Because Dumbaugh fails to plead facts showing that Rankine's conduct qualifies as severe or pervasive, the Court will dismiss this case with prejudice.

### I. FACTS ALLEGED IN THE AMENDED COMPLAINT

Dumbaugh joined the faculty of the University's Department of Mathematics and Computer Science in 1994. Since then, she has received multiple awards, published a book and multiple articles, delivered presentations, and served on a number of University committees. In 2016, Rankine became Dean of the School of Arts and Sciences and chose Dumbaugh to serve as Associate Dean. The parties anticipated that Dumbaugh would serve a three-year term with the potential that Rankine would reappoint her for an additional three years. Initially, Dumbaugh and Rankine had a cordial working relationship with one another. Dumbaugh's relationship with Rankine, however, began to deteriorate in April, 2017.

During a staff meeting in April, 2017, Rankine pressed Dumbaugh to share the reactions of faculty members to his remarks at a recent University event. After Dumbaugh conveyed several negative reactions from faculty members, Rankine cut her off, and said that the reactions came "from a position of low self-esteem." (Dk. No. 14, ¶ 11.) During their next biweekly meeting, Dumbaugh brought up Rankine's reaction at the staff meeting. Rankine "apologized and asked her to let him know if he behaved this way again." (*Id.* ¶ 12.)

In several staff meetings during April and May, Rankine told Dumbaugh not to "panic." (*Id.* ¶ 13.) During one meeting, Dumbaugh asked Rankine to stop ridiculing her in front of other faculty members. Rankine responded, "[y]ou are not in charge of this meeting!" (*Id.* ¶ 14.)

In May, 2017, Rankine directed Dumbaugh to organize the new faculty orientation. When Dumbaugh presented her preliminary arrangements, Rankine responded, "[w]hy do you make these plans without checking with me?" (*Id.* ¶ 15.) This conduct made it difficult for Dumbaugh to accomplish her assigned tasks.

In June, 2017, Rankine asked Dumbaugh to coordinate first-year undergraduate classes. To accomplish that task, Dumbaugh needed first-year registration data. Rankine, however, prohibited Dumbaugh from communicating with the Associate Provost, who had the necessary data. Dumbaugh proceeded to schedule classes by contacting individual department chairs. Even though her predecessor had also contacted department chairs for scheduling purposes, Rankine "threw his head back in disgust and criticized her for 'singling out chairs this way.'" (*Id.* ¶ 17.) This "occurred in the presence of an administrative assistant, and was later repeated in an e-mail." (*Id.*) Dumbaugh believed Rankine's reaction to mean that she should stop discussions with department chairs about course offerings. Rankine also reassigned Dumbaugh's tasks without telling her and barred other women from contacting University officials to complete their tasks.

2

In July, 2017, Rankine asked Dumbaugh to call department chairs about under-enrolled courses. Dumbaugh asked Rankine to clarify his directions because he had recently criticized her for contacting department chairs. Rankine responded, "I don't like hallway conversations." (*Id.* ¶ 19.) Later that day, Rankine and Dumbaugh met with other office staff members for a budget meeting. When Rankine asked Dumbaugh about a project during the meeting, she prefaced her answer with, "I know this might make you frustrated or angry." (*Id.* ¶ 20.) Rankine responded, "[w]hen have I been frustrated or angry? This comment is not constructive. It is not helpful." (*Id.*) In contrast, when a male counterpart began bad news with "[t]his is going to piss you off," Rankine simply replied, "[t]ry me." (*Id.* ¶ 21.)

On August 2, 2017, Rankine reappointed Dumbaugh as Associate Dean for another year. During a retreat later that month, staff members discussed their results from a "love language" survey. When a staff member shared that his love language was "words of affirmation," Rankine said, "[y]ou are a 'words of affirmation' person: [y]ou are doing a good job." (*Id.* ¶ 26) Rankine turned to Dumbaugh and said, "[y]ou are a 'words of affirmation person: You are doing a good job." (*Id.*) A male colleague sitting next to Dumbaugh put his face near Dumbaugh's face and said, "[s]o you want affirming words, just not from this close distance." (*Id.*) Dumbaugh responded, "these words only count if they are not spoken disingenuously." (*Id.*) Rankine replied, "[t]hat is so low." (*Id.*) A colleague later told Dumbaugh "that she observed disdain towards her in the Dean's expression throughout the meeting." (*Id.*)

Two days after the staff retreat, Dumbaugh called Rankine to resign as Associate Dean. Rankine simply responded, "[o]key, dokey," and did not request an explanation. (*Id.* ¶¶ 27-28.) Rankine asked Dumbaugh to stay in the position until October 13, 2017, to help prepare for her replacement's taking office. In September, 2017, Rankine told the Academic Council that

3

Dumbaugh would return to the math department. Following the announcement, a department chair asked whether Dumbaugh "made the decision [to resign] or [whether] the decision was made for [her]." (*Id.* ¶ 29.) Several weeks later, Rankine told the School of Arts and Sciences faculty that Dumbaugh had resigned. He did not express an appreciation for the work she performed while serving as Associate Dean or ask the faculty to thank her for her service, something Rankine did when other colleagues resigned. Several of Dumbaugh's colleagues remarked that Dumbaugh's resignation seemed more like she had been fired.

Dumbaugh alleges that in at least nine of her fifteen scheduled meetings with Rankine and other colleagues, Rankine "insulted [Dumbaugh], stripped her of some responsibilities, encouraged her to work on data [and] then asked for the data and removed the responsibility without warning, and . . . asked her to complete tasks [and] then criticized her for doing just that." (*Id.* ¶ 34.) In total, she says that she experienced hostility in eleven out of seventeen interactions with Rankine. She also says that Rankine was hostile to other female faculty and staff, many of whom resigned as a result. At least one woman reported Rankine's pattern of behavior during an exit interview.

After exhausting her administrative remedies, Dumbaugh filed this action. Her original complaint alleged two counts: gender discrimination in violation of Title VII (Count One), and hostile work environment in violation of Title VII (Count Two). The Court granted the University's first motion to dismiss for failure to state a claim and granted Dumbaugh leave to amend her complaint as to Count Two only. Dumbaugh's amended complaint alleges that she suffered a hostile work environment in violation of Title VII. The University has moved to dismiss her amended complaint for failure to state a claim.

## II. **DISCUSSION**[1]

To survive a motion to dismiss on a hostile work environment claim, a plaintiff must plead sufficient facts showing that the conduct "(1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015). The University argues that Dumbaugh fails to plead sufficient facts as to the second and third prongs. The Court, however, has already concluded that Dumbaugh has sufficiently pled that Rankine's conduct "was because of [Dumbaugh's] sex." *Id.*; (Dk. No. 10, at 4-5.) Thus, the Court will consider whether Dumbaugh adequately pleads that Rankine's conduct "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Foster*, 787 F.3d at 254.

Dumbaugh's complaint "must clear a high bar" to meet the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the

---

[1] The University has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable." *Id.* (internal citations and quotations omitted). Similarly, offensive epithets, simple teasing, and offhand remarks will not satisfy the test. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

In her original complaint, Dumbaugh pled facts showing that Rankine made offensive and insulting comments to her, disrespected and mistreated her, unfairly and publicly criticized her, and reassigned tasks without telling her. The Court, however, concluded that those facts failed to meet the severe or pervasive standard.[2] (*See* Dk. Nos. 10, 11.)

In her amended complaint, Dumbaugh provides more detail about her allegedly hostile interactions with Rankine and shows that Rankine also mistreated other female faculty and staff. Dumbaugh's amended complaint continues to show that Rankine disrespected and mistreated her.

Dumbaugh, however, proceeds under essentially the same facts as alleged in her original complaint. She does not describe any of her interactions with Rankine in substantially different detail or include new instances of allegedly hostile conduct. Rather, most of Dumbaugh's new allegations either describe the effect Rankine's conduct had on other women or involve conclusory assertions about the motivation behind Rankine's conduct. In other words, the new details in Dumbaugh's amended complaint do not "nudge[ ] [her] claim[ ] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, Dumbaugh has not pled new or materially different

---

[2] The Court's analysis in its September 11, 2019 Opinion applies with equal force here.

6

facts that give rise to an actionable hostile work environment claim. Accordingly, Rankine's conduct does not qualify as severe or pervasive. Dumbaugh, therefore, fails to state a hostile work environment claim.

### III. CONCLUSION

Because Dumbaugh has failed to plead facts showing that Rankine's conduct qualifies as severe or pervasive, the Court will grant the University's motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 March 2020
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge